UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

—————————————————

In re:

JONATHON BARNES and                                    Case No. DK 11-03072
KRISTINE BARNES,                                       Hon. Scott W. Dales

         Debtors.

_____/

OPINION AND ORDER REGARDING MOTION TO LIFT STAY

PRESENT:    HONORABLE SCOTT W. DALES
United States Bankruptcy Judge

On April 15, 2011, PNC Mortgage, a division of PNC Bank ("PNC") filed its Motion for Relief from the Automatic Stay (the "Motion," DN 14) as the mortgage holder on real property owned by Jonathon and Kristine Barnes (the "Debtors"). The court held a final hearing on June 9, 2011 in Kalamazoo at which time the parties declined the opportunity to participate in a formal evidentiary hearing, instead directing the court to the bankruptcy schedules and a single document, entitled 2010 Notice of Assessment, Taxable Valuation, and Property Classification that the Debtors filed. For the following reasons, the court will grant PNC's Motion.

PNC relies principally on 11 U.S.C. § 362(d)(2)(A) and (B), arguing that the court must grant relief from the automatic stay because the Debtors do not have any equity in the property and the property is not necessary to an effective reorganization. PNC also argues that the Debtors have provided no adequate protection under 11 U.S.C. § 362(d)(1) because they have not made the $1,128.80 monthly payment for six months. The Debtors admit they are in arrears but assert they are working with PNC to arrange a new payment plan. The Chapter 7 trustee did not participate in the hearing or file any response.

As the movant, PNC bears the burden of proof on the issue of lack of equity in the property, and the Debtors, as the parties opposing the Motion, bear the burden of proof on all other issues.  11 U.S.C. § 362(g).

Under 11 U.S.C. § 362(d)(2), the court may grant relief from stay if the debtor does not have equity in the property and the property is not necessary for an effective reorganization. Because the Debtors filed a Chapter 7 petition, there is no reorganization in prospect.  Therefore, the only issue is whether PNC has met its burden of establishing an absence of equity.

In bankruptcy, "[e]quity . . . is the value, above all secured claims against the property, that can be realized from the sale of the property for the benefit of the unsecured creditors." *Stephens Industries, Inc. v. McClung*, 789 F.2d 386, 392 (6th Cir. 1986) (*quoting In re Mellor*, 734 F.2d 1396, 1400 n.2 (9th Cir. 1984)).  For purposes of relief from stay motions, some courts also consider the effect of a debtor's exemption in calculating equity.  *In re Moore*, 2011 WL 1807381 (Bankr. N.D. Ind. 2011) ("Equity in this sense focuses on whether the property in question has value in excess of the amounts due on account of the liens against it and any claimed exemption, so that its sale by the trustee would generate money for the payment of unsecured claims.").  Factoring in a debtor's exemption when calculating equity is consistent with the Sixth Circuit's concern for unsecured creditors in the stay-relief context. *Stephens Industries*, 789 F.2d at 392.

To meet its burden, PNC relies upon the Debtors' schedules as evidence that the property is worth about $140,000.00.  The parties evidently agree that the Debtors owe $128,238.51 in principal, interest, and fees, on two secured notes, and PNC asserts, without contradiction, that in calculating equity, the court must deduct the costs of sale which equal approximately $14,000.00, or 10% of the property's value.  The Debtors also claim an exemption in the

property of $14,910.00, under 11 U.S.C. § 522(d)(1).  Thus, argues PNC, no equity exists in the property, and the court should grant relief from stay.

In response, the Debtors eschewed the property's value as reported on their bankruptcy schedules and offered a 2010 Notice of Assessment, Taxable Valuation and Property Classification related to the property.  This document sets forth the property's "assessed value" or, more commonly, the "SEV," which, according to Michigan's real property tax system, should be half of the "true cash value."  *See In re Immanuel, LLC,* 2011 WL 938410 (Bankr. W.D. Mich. 2011) (explaining SEV); M.C.L. § 205.737(2); *id.* § 211.27(1) (defining "true cash value" as "the price that could be obtained for the property at private sale, and not at auction sale . . . or at forced sale").[1]  Doubling the SEV, the Debtors estimate the property is worth approximately $177,932.00, thereby providing roughly $35,694.00 in equity, giving PNC adequate protection in the form of an equity cushion, and making relief from the stay unnecessary.

The court must decide whether to use the value of the property as provided on the Debtor's bankruptcy schedules or the SEV to determine whether equity exists.

An SEV is an unsworn compilation of research assembled by local public officials pursuant to statutory duties prescribed as part of the state's real property tax collection program. The 2010 SEV is based upon an assessment of data compiled in late 2009 and, therefore, represents value from a year and a half ago.  *Immanuel, supra.*  Unlike an appraisal, which is generally the product of property inspections, sales comparisons, and the individualized judgment of an appraiser, the SEV is not property-specific.  *Id.*  The Debtors are asking the court

---

[1] The parties have not favored the court with arguments about whether it should consider liquidation value (because this is a chapter 7 case and PNC seeks to foreclose) or some other valuation (because the Debtors intend to keep the property by obtaining relief through a hoped-for out-of-court loan modification).  *See* 11 U.S.C. § 506(a)(1) (valuation depends upon proposed disposition or use).

to use this somewhat outdated and non-specific information from late 2009 to establish the value of their property in late June 2011.

On the other hand, the Debtors' schedules are admissions made under penalty of perjury. The Debtors should expect the court and other interested parties to rely upon them for purposes of establishing asset value in their bankruptcy proceeding.  Moreover, the schedules are the product of the Debtors' familiarity with their specific property and their statutory duty to carefully review and verify the accuracy of the information.  *See* 11 U.S.C. § 521(1).  The property value in the Debtors' schedules of $140,000.00 was presumably accurate as of March 2011, the date of their bankruptcy petition.  The court is much more inclined to accept this 2011 property-specific admission that the Debtors made for purposes of this proceeding than the non-specific 2010 SEV that an unnamed official prepared for the purpose of collecting real estate taxes.[2]  In addition, the 2010 SEV was most probably available to the Debtors at the time they prepared their schedules, but they chose to use a lower value.

Consequently, the court finds that the property is worth $140,000.00 and is encumbered by PNC's lien in the amount of $128,231.51.  After factoring in reasonable and uncontested sales costs of $14,000.00, and the Debtors' claimed exemption of $14,910.00, the court concludes the property has no equity.  The absence of equity in a Chapter 7 case justifies entry of an order granting relief from the automatic stay under 11 U.S.C. § 362(d)(2).

In reaching this decision, the court has also considered the fact that the Debtors are six months behind in making mortgage payments.  This admitted delinquency fortifies the court's conclusion that it should grant relief from the automatic stay under the circumstances presented.

---

[2] The SEV is also, strictly speaking, "hearsay" within the meaning of Fed. R. Evid. 801, though PNC did not object to its admission on this or any other grounds.  The schedules are "non-hearsay" because they are offered against the Debtors.  *See* Fed. R. Evid. 801(d).  Even if the SEV could fall within an exception to the hearsay rule, *see* Fed. R. Evid. 803(8), the hearsay nature of the evidence also affects the weight the court is willing to give it.

*In re Lopez*, 446 B.R. 12, 20 (Bankr. D. Mass. 2011) (granting relief from stay in a chapter 13 case in part because the "obligation underlying the Mortgage is substantially undersecured; a situation that will only worsen with each missed payment"); *cf. In re Schuessler*, 386 B.R. 458, 480 (Bankr. S.D.N.Y. 2008) (noting, in *dicta*, that failure to make payments may constitute cause to modify the automatic stay "where a debtor lacks the willingness; the current means; or a realistic, near-present ability to make contractual payments to the secured creditor"). Nothing in this Opinion and Order, however, should discourage the parties from negotiating a loan modification or forbearance agreement as the Debtors described at the hearing. The court is simply granting PNC relief from the automatic stay.

Finally, this Opinion and Order shall be stayed for fourteen days from entry as provided in Fed. R. Bankr. P. 4001(a)(3).

NOW, THEREFORE, IT IS HEREBY ORDERED that the Motion (DN 14) is GRANTED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Opinion and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Debtors, Joy L. Foster, Esq., Attorney for Debtors, James W. Batchelor, Esq., Attorney for PNC Mortgage, Scott A. Chernich, Esq., Chapter 7 Trustee, and Dean E. Rietberg, Esq., trial attorney for the U.S. Trustee.

END OF ORDER

**IT IS SO ORDERED.**

Scott W. Dales
United States Bankruptcy Judge

**Dated: June 28, 2011**